[Cite as *State v. Cornish*, 2014-Ohio-4279.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                                           :

      Plaintiff-Appellee,                        :

      - vs -                                         :

ROBERT E. CORNISH,                               :

      Defendant-Appellant.                      :

CASE NO.   CA2014-02-054

O P I N I O N
9/29/2014


CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. TRD 1301471


Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Robert Cornish, appeals his conviction in the Butler County Area I Court for failing to yield at a stop sign.

{¶ 2} On September 17, 2013, appellant was cited for failing to yield at a stop sign in violation of Oxford Codified Ordinances (OCC) 331.19. The citation stemmed from a collision between appellant and Brian Overly which occurred at the intersection of College Avenue and Chestnut Street in Oxford, Ohio. A bench trial was held on December 12, 2013.

Appellant, Overly, Katherine Larsen (a witness to the collision), and Oxford Police Officer Benjamin Hoole (who was dispatched to the scene of the accident) testified at trial.

{¶ 3} College Avenue is a north-south, two-lane roadway which dead-ends on its south end into Chestnut Street in a "T" intersection. Chestnut Street is an east-west, two-lane roadway. The intersection is a three-way stop intersection controlled by three stop signs; traffic traveling southbound on College Avenue and eastbound and westbound on Chestnut Street is required to stop at the intersection.

{¶ 4} On the morning of September 17, 2013, appellant was operating his Chevrolet Silverado pick-up truck and hauling a trailer westbound on Chestnut Street, and Overly was operating his vehicle eastbound on Chestnut Street, as they both approached the intersection. Appellant testified he stopped at the stop sign before proceeding through the intersection. Overly testified he stopped at the stop sign before entering the intersection and turning left onto College Avenue. The front bumper of appellant's pick-up truck struck the right rear passenger door of Overly's vehicle as Overly was completing his left turn onto College Avenue. Overly's vehicle was totaled as a result of the collision. At the time of the collision, Larsen was stopped in the southbound lane of College Avenue waiting to turn into Chestnut Street. She testified the collision happened in front of her and that Overly's vehicle "was pretty well through the intersection before it got hit."

{¶ 5} By judgment entry filed on January 16, 2014, the trial court found appellant guilty as charged. Appellant was ordered to pay a $60 fine plus court costs.

{¶ 6} Appellant appeals, raising four assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED WHEN IT FAILED TO MAKE A FINDING REGARDING "RIGHT OF WAY."

{¶ 9} Appellant argues the trial court erred in failing to determine who had the right of

- 2 -

way before the collision. Appellant further argues that even if Overly had the right of way, he forfeited it by committing three traffic violations while going through the intersection: failure to use his turn signal, failure to yield while turning left, and improper left turn (appellant alleges Overly "cut the corner" while making his left turn). Appellant cites *State v. Harris*, 12th Dist. Clinton No. CA91-06-012, 1991 WL 278245 (Dec. 30, 1991), in support of his argument.

{¶ 10} Appellant was convicted of failing to yield at a stop sign, in violation of OCC 331.19(a), which states:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

OCC 331.19(a) mirrors R.C. 4511.43(A).

{¶ 11} As applicable here, R.C. 4511.01(UU)(1) defines "right of way" as the "right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path." The "definition is impersonal in nature and relates to the right of a vehicle to proceed uninterruptedly in preference to another vehicle." *Mikusevich v. Reed*, 11th Dist. Trumbull No. 2715, 1979 WL 208185, *4 (Oct. 1, 1979) (Hofstetter, J., concurring).

{¶ 12} "[A] driver with the right of way has an absolute right to proceed uninterruptedly in a lawful manner, and other drivers must yield to him." *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, ¶ 10 (3d Dist.). "Conversely, the driver with the right of way forfeits this preferential status over other drivers if he or she fails to proceed in a lawful manner." *Id.* "[T]he state is not required to prove lawful operation as an element of proving a failure to

yield the right-of-way, as the law presumes that a vehicle that is claimed to have the right-of-way is proceeding lawfully." *Harris*, 1991 WL 278245 at *2. Thus, "in order to establish that the right-of-way has been lost, the defendant is required to present evidence rebutting the presumption of lawful operation." *Id.* "When evidence of unlawful operation is presented, it is incumbent upon the trier-of fact to resolve the issue of whether the right-of-way has been forfeited." *Id.*

{¶ 13} In *Harris*, the defendant collided with William Miller at the intersection of Mount Pleasant Road and Gurneyville Road. Traveling on Mount Pleasant Road, the defendant stopped at the stop sign before proceeding through the intersection. It appears drivers traveling on Gurneyville Road did not have to stop at the intersection. At issue at trial was Miller's speed immediately prior to the collision. Miller testified he was traveling within the speed limit whereas the defendant testified Miller was traveling at an excessive speed. Miller's testimony was corroborated by a state highway patrol report. The defendant's testimony was supported by the testimony of an expert witness who also explained why the state highway patrol report was incorrect.

{¶ 14} The trial court convicted the defendant of failure to yield in violation of R.C. 4511.43. The trial court found that, had the defendant simply continued across the intersection (rather than attempting to back out after observing Miller approaching the intersection), the accident would not have occurred. In reaching its guilty verdict, the trial court did not explicitly resolve the issue of Miller's speed. This court reversed the trial court's judgment and remanded for a determination of whether Miller was operating his vehicle in a lawful manner. Specifically, this court found that the defendant had presented evidence that Miller was proceeding in an unlawful manner and thus:

> Having been presented with evidence to rebut the presumption
> of lawful operation, the trial court was obligated to resolve the
> issue of whether Miller was proceeding lawfully. * * * The record

reveals no conclusion on the part of the trial court concerning the manner in which Miller was proceeding. Therefore, as there could be no finding of a violation of R.C. 4511.43 without a determination that Miller possessed the right-of-way, the trial court erred in its finding of guilt.

*Harris*, 1991 WL 278245 at *3.

{¶ 15} In *Cleveland v. Keah*, 157 Ohio St. 331 (1952), a decision cited by the state, the defendant was convicted of failing to yield when he turned left in front of an oncoming vehicle at an intersection, resulting in a collision. The defendant challenged his conviction on the ground the other driver was proceeding in an unlawful manner by speeding. The Ohio Supreme Court upheld the conviction, finding:

> It would * * * seem apparent that the 30-mile-per-hour speed of the automobile as testified to was not a factor in the collision but that the collision was due entirely to the sudden left turn of [the defendant] without regard for the existing [oncoming] traffic conditions[.]
>
> * * *
>
> The Municipal Court found the defendant guilty of violating [the ordinance] by turning his vehicle to the left directly into or in front of the oncoming automobile, thereby causing the collision, and apparently concluded, on the basis of facts developed, that the driver of the automobile was not at fault and not proceeding in such a manner as to forfeit his right of way.

*Id.* at 336-337.

{¶ 16} Appellant asserts he presented evidence Overly was proceeding through the intersection in an unlawful manner at the time of the collision. Specifically, appellant testified Overly failed to use his turn signal, "cut the corner" while turning left onto College Avenue, and failed to yield to appellant while turning left, in violation of OCC 331.14, 331.10, and 331.17. No other evidence was presented by appellant in support of Overly's three alleged traffic violations. Overly testified that at the time of the collision, (1) he "was going perpendicular," (2) he was almost all the way through the intersection, and (3) "given another

second, [he] would have been out of the intersection." No evidence was presented to refute or corroborate appellant's assertion Overly did not use his turn signal.

{¶ 17} As is fully discussed in appellant's third and fourth assignments of error, testimony at trial indicates that Overly's vehicle was nearly through the intersection when it was struck by appellant's pick-up truck. Thus, Overly was entitled to the right of way pursuant to the explicit terms of OCC 331.19(a) and could not have failed to yield while turning left in violation of OCC 331.17 as alleged by appellant. By finding appellant guilty of failing to yield at a stop sign, the trial court implicitly found that Overly's alleged traffic violations did not contribute to the collision and/or that Overly was not proceeding in an unlawful manner when his vehicle was struck by appellant's pick-up truck.

{¶ 18} In *Keah*, the municipal court implicitly determined that the oncoming driver's alleged unlawful operation of his vehicle was not a factor contributing to the collision and therefore the driver did not forfeit the right of way. *Harris* differs from *Keah* in that the evidence in *Harris* raised an unresolved issue of whether Miller's speed contributed to the collision with a consequent forfeiture of the right of way. The case at bar is controlled by *Keah*, and not *Harris*, because of the unequivocal evidence of Overly's presence in the intersection at the time of the collision. Therefore, appellant failed to yield in violation of OCC 331.19, regardless of Overly's alleged improper left turn and failure to use his turn signal.

{¶ 19} In light of the foregoing, we find that the trial court did not err in failing to expressly determine who had the right of way before the collision, and in implicitly finding that Overly had and maintained the right of way at the time of the collision.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ALLOWED THE STATE TO OFFER OPINION EVIDENCE IN

VIOLATION OF EVID.R. 701 AND EVID.R. 702.

{¶ 23} Appellant argues the trial court erred in allowing Officer Hoole to state his opinion as to whether appellant failed to stop at the stop sign prior to the collision. Appellant argues the officer's testimony was inadmissible because the officer was neither an expert witness under Evid.R. 702 nor a proper lay witness under Evid.R. 701. The record shows that Officer Hoole did not testify as an expert witness. Consequently, we will not address appellant's argument that the officer's testimony was inadmissible under Evid.R. 702.

{¶ 24} Pursuant to Evid.R. 701, a lay witness may testify in the form of opinions or inferences as long as the opinions or inferences are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." "If the opinion is not 'rationally based on the perception of the witness,' then the opinion is speculation, and as such, cannot be 'helpful to a * * * determination of a fact in issue.'" *State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 23, quoting *State v. Hall*, 2d Dist. Montgomery No. 19671, 2004-Ohio-663, ¶ 8.

{¶ 25} Evid.R. 701 grants the trial court wide latitude in allowing or controlling lay witness opinion testimony. *State v. Kehoe*, 133 Ohio App.3d 591, 603 (12th Dist.1999). An appellate court reviews a trial court's decision regarding lay witness testimony for an abuse of discretion. *Id.*; *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). The party challenging the testimony must demonstrate that, if the trial court abused its discretion, such abuse "materially prejudiced the objecting party." *Kehoe* at *id.*

{¶ 26} Officer Hoole testified he arrived at the scene of the accident four minutes after the collision. Appellant's pick-up truck and Overly's vehicle had not been moved and were in their resting position. Officer Hoole testified he looked at the vehicles' resting position, examined markings on the pavement, examined the damage to both vehicles, interviewed

Larsen, and spoke to both appellant and Overly.

**{¶ 27}** Officer Hoole testified that appellant's pick-up truck was stopped in the intersection, blocking College Avenue, and that as a result of the collision, Overly's vehicle "was actually spun almost 180 degrees" and was partially resting in the crosswalk of the southbound lane of College Avenue. The officer testified appellant's pick-up truck sustained some damage to the grille and bumper, however it was not heavy damage. The officer found Overly's vehicle to be damaged "on the B pillar in the rear door of the car," which broke out a glass window and disabled the vehicle as "the strike impeded the turning of the rear wheel."

**{¶ 28}** The officer was not allowed to testify where the collision occurred within the intersection or whether Overly's vehicle was almost through the intersection before it was struck. The officer testified he considered the resting position of the vehicles in determining whom to cite for the collision. Officer Hoole explained that based on the vehicles' resting position, Larsen's statement, and the fact he did not believe appellant's pick-up truck "could have caused that much damage to [Overly's] vehicle, if it had actually stopped," the officer decided to cite appellant for failure to yield.

**{¶ 29}** We find that Officer Hoole's opinion was rationally based on his perception. His decision to cite appellant and his belief appellant could not have stopped at the intersection were based on his observation of the vehicles' resting position four minutes after the collision, markings on the pavement, and the damage sustained by the vehicles. Given the conflicting statements provided by appellant and Overly, the officer's opinion was also helpful to the trial court in determining whose testimony to credit on the issue of right of way at the time of the collision.

**{¶ 30}** In addition, this was a bench trial and the trial court is presumed to know the applicable law and apply it accordingly. *See State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383. Further, the trial court is presumed to

consider only reliable, relevant, and competent evidence unless it affirmatively appears to the contrary. *Id.*; *State v. Waters*, 8th Dist. Cuyahoga No. 87431, 2006-Ohio-4895. Therefore, we presume that the trial court considered and properly applied all applicable law. *See State v. Haney*, 7th Dist. Mahoning No. 05 MA 151, 2006-Ohio-4687 (police officer's improper lay witness opinion under Evid.R. 701 does not constitute reversible error where the trial is a bench trial, the trial court is presumed to consider only relevant and competent evidence, and there is no evidence the trial court relied on incompetent evidence in reaching its verdict).

{¶ 31} We therefore find that Officer Hoole's testimony was admissible lay witness opinion testimony under Evid.R. 701 and that the trial court did not abuse its discretion in allowing the officer to so testify.

{¶ 32} Appellant's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT DEFENDANT-APPELLENT OF FAILURE TO YIELD IN VIOLATION OF OCC §331.19. (sic)

{¶ 35} Assignment of Error No. 4:

{¶ 36} APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 37} Appellant argues his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove appellant did not stop at the marked stop line or failed to yield to an immediate hazard.

{¶ 38} When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court's function is to examine the evidence admitted at trial, and upon viewing such evidence in a light most favorable to the prosecution, determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus;

*State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 23.

{¶ 39} When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. Godby*, 12th Dist. Butler No. CA2005-03-056, 2006-Ohio-205, ¶ 4, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59 (1988). In conducting its review, an appellate court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Cooper*, 12th Dist. Butler No. CA2010-05-113, 2011-Ohio-1630, ¶ 7.

{¶ 40} In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. *Id.* at ¶ 7. A determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 10.

{¶ 41} Appellant was convicted of violating OCC 331.19(a) which requires a driver approaching a stop sign to first stop at a clearly marked stop line, and after having stopped, to yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection.

{¶ 42} Appellant first argues the state failed to prove he did not stop at a "clearly marked stop line," and furthermore, failed to prove a clearly marked stop line existed for the westbound lane of Chestnut Street at the intersection with College Avenue.

{¶ 43} While neither Overly, nor Officer Hoole or Larsen testified as to the existence of

a clearly marked stop line, both the officer and Larsen testified the intersection was a three-way stop. The officer further testified the intersection was controlled by three stop signs. While OCC 331.19(a) refers to a "clearly marked stop line," the principal objective of the provision is to require all traffic to stop in obedience to a stop sign. *See Kurtz v. Adams*, 3d Dist. Allen No. 1-84-63, 1986 WL 5911 (May 12, 1986) (addressing R.C. 4511.43, a statutory provision identical to OCC 331.19). We also note that photographs taken by appellant sometime after the collision and admitted into evidence show the existence of a "clearly marked stop line" in the westbound lane of Chestnut Street at the intersection with College Avenue.

{¶ 44} The testimony of appellant, Overly, and Larsen reveals that as they all approached the intersection, two vehicles on Chestnut Street were already at the intersection: one vehicle was ahead of appellant's pick-up truck in the westbound lane of Chestnut Street, and one vehicle was ahead of Overly's vehicle in the eastbound lane of Chestnut Street. Appellant testified that as he approached the intersection, the vehicle ahead of him was leaving the intersection. Thereafter, appellant stopped at the stop sign before proceeding through the intersection. Overly testified appellant did not stop at the stop sign but rather, followed the vehicle that was ahead of appellant's pick-up truck directly through the intersection. Larsen could not say whether appellant stopped before proceeding through the intersection.

{¶ 45} It is well-established that when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *See State v. Davis*, 12th Dist. Butler No. CA2010-06-143, 2011-Ohio-2207. The trial court, sitting as the trier of fact, did not lose its way simply because it chose to believe Overly's testimony over appellant's testimony. *See State v. Amburgey*, 12th Dist. Clermont No. CA2005-01-007, 2006-Ohio-1000, ¶ 7.

**{¶ 46}** Further, even assuming, arguendo, that appellant stopped at the stop sign before proceeding through the intersection, OCC 331.19 requires a driver, "[a]fter having stopped, to yield the right of way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection." Appellant argues the state failed to prove Overly's vehicle was already in the intersection or that it was an immediate hazard to appellant's vehicle when appellant proceeded to enter the intersection.

**{¶ 47}** Overly testified that when he stopped at the stop sign in the eastbound lane of Chestnut Street, two vehicles were already at the intersection: one vehicle was on College Avenue, ahead of Larsen's vehicle, and one vehicle was in the westbound lane of Chestnut Street, ahead of appellant's pick-up truck. After these two vehicles went through the intersection, Overly entered the intersection to turn left onto College Avenue. As Overly was turning left, appellant's pick-up truck hit Overly's vehicle in the rear passenger door. Overly testified that at the time of the collision, (1) he "was going perpendicular," (2) he was almost all the way through the intersection, (3) in fact, "given another second, [he] would have been out of the intersection," and (4) he did not see appellant's vehicle "until about a split second" before the collision. Overly believed he was driving at 10 m.p.h. at the time of the collision.

**{¶ 48}** Larsen testified that when she stopped at the stop sign on College Avenue, a vehicle traveling in appellant's lane went through the intersection. Larsen believed Overly's vehicle was already stopped by the time she reached the intersection. Thereafter, as Overly's vehicle was going through the intersection and turning left onto College Avenue, it was hit by appellant's pick-up truck. Larsen testified she was surprised by the collision as she believed it was Overly's turn to proceed through the intersection. She further testified Overly's vehicle "was pretty well through the intersection before it got hit."

**{¶ 49}** Officer Hoole's testimony indicates that Overly's vehicle was struck in the rear

passenger door by the front right corner of appellant's pick-up truck. The officer testified he did not believe appellant's vehicle could have caused that much damage to Overly's vehicle, had appellant actually stopped at the stop sign. The officer testified that based on Larsen's statement, the resting place of the vehicles which was not where the collision occurred, and the extent and location of the damage on the vehicles, he decided to cite appellant for failure to yield.

{¶ 50} Appellant testified that as he approached the intersection, (1) a vehicle ahead of him on Chestnut Street and a car ahead of Overly on Chestnut Street were going through the intersection; (2) Larsen's vehicle was stopping at the stop sign on College Avenue; and (3) Overly's vehicle was approaching the stop sign on Chestnut Street. Neither Larsen nor Overly had their turn signal on. Appellant testified that when he was stopped at the intersection, the vehicle ahead of him was "pretty much" through the intersection and Overly's vehicle was stopped at the intersection. Appellant testified he was concerned Larsen might pull out in front of him. Thereafter, as appellant proceeded through the intersection, Overly's vehicle "cut the corner" while turning left onto College Avenue, pulled in front of appellant, and hit him. Appellant testified the collision occurred in front of the southbound lane of College Avenue. He also testified that as he entered the intersection, there was no vehicle in the intersection that would have created the threat of an impact. Appellant testified that "where [his] car came to its resting spot isn't actually the point of impact."

{¶ 51} The record shows that during trial, appellant and Overly used a diagram of the intersection to illustrate their testimony and explain how and where the collision occurred. Officer Hoole likewise used the diagram to illustrate his testimony. The diagram is not part of the record before this court.

{¶ 52} Upon thoroughly reviewing the record, we find that appellant's conviction for failing to yield is not against the manifest weight of the evidence. Testimony at trial indicates

that Overly's vehicle was well within the intersection (if not almost out of the intersection) and turning left onto College Avenue when it was struck by appellant's vehicle. Thus, pursuant to OCC 331.19, Overly's vehicle was in the intersection, or alternatively, constituted an immediate hazard to appellant's vehicle at the time of the collision.

{¶ 53} While appellant and Overly provided conflicting testimony, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony. *See Davis*, 2011-Ohio-2207. As the trial court was in the best position to gauge the credibility of the witnesses and had the benefit of the diagram of the intersection, we "afford substantial deference to [the trial court's] determination of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, ¶ 20; *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240. The trial court did not lose its way simply because it chose to believe Overly's testimony over appellant's version of the incident. *Amburgey*, 2006-Ohio-1000 at ¶ 7.

{¶ 54} Further, this was a three-way stop intersection controlled by three stop signs, and neither College Avenue nor Chestnut Street were a through roadway. Thus, the intersection was akin to a four-way stop intersection. Because "the code does not afford a preferential right of way to any driver required to stop, the driver approaching a four-way stop intersection from any direction has a statutory duty to stop, followed by the common-law duty to exercise ordinary care [while] proceed[ing] through the intersection." 7 Ohio Jurisprudence 3d, Traffic Laws, Section 341 (2014); *Allstate Ins. Co. v. Angelo*, 7 Ohio App.2d 149 (5th Dist.1966). We find the same analysis applies here.

{¶ 55} We also note that *State v. Abele*, 4th Dist. Jackson No. 04CA7, 2005-Ohio-2378, a decision of the Fourth Appellate District cited by appellant, involves a three-way stop intersection and a violation of R.C. 4511.43. However, this decision is not applicable here: the case did not involve a collision, there was no failure to yield, and thus, the defendant's

failure to yield was not an issue. Rather, the defendant was solely convicted of failing to stop at a stop sign under the first part of R.C. 4511.43. For the same reasons, a decision of the Eighth Appellate District cited by appellant and involving a defendant's conviction under a city ordinance identical to OCC 331.19(a) and R.C. 4511.43(A), solely for failing to stop at a stop sign in a four-way stop intersection, is inapplicable here. *See Cleveland v. McShane*, 8th Dist. Cuyahoga No. 96720, 2012-Ohio-1532.

{¶ 56} Accordingly, in light of all of the foregoing, we find that appellant's conviction for failure to yield at a stop sign is not against the manifest weight of the evidence. We also necessarily find that the conviction is supported by sufficient evidence. *Church*, 2012-Ohio-3877 at ¶ 10.

{¶ 57} Appellant's third and fourth assignments of error are overruled.

{¶ 58} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.