[Cite as *State v. Zimmerer*, 2020-Ohio-3921.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-10-176 |
| | : | O P I N I O N |
| - vs - | | 8/3/2020 |
| | : | |
| LAWRENCE J. ZIMMERER, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CRB 1801483

Michael T. Gmoser Butler County Prosecuting Attorney, Willa Concannon, Government Services, Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Scott N. Blauvelt, 246 High Street, Hamilton, Ohio 45011, for appellant

**S. POWELL, J.**

{¶ 1}  Appellant, Lawrence J. Zimmerer, appeals his conviction in the Butler County Area III Court after the trial court found found him guilty of voyeurism following a bench trial. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2}  On September 24, 2018, a detective with the West Chester Police Department

filed a complaint charging Zimmerer with voyeurism in violation of R.C. 2907.08(D), a first-degree misdemeanor. As alleged in the complaint, the charge arose after Zimmerer used his cellphone camera to "take pictures and or video" of the victim, A.T., without her consent "while she bent over wearing a dress" on the afternoon of September 4, 2018. The matter ultimately proceeded to a bench trial held on July 20, 2019. At trial, the court heard testimony from five witnesses including A.T., Zimmerer, as well as T.T., a woman whom Zimmerer had photographed using his cellphone camera under similar circumstances approximately three weeks prior to the incident involving A.T.

**The Trial Testimony**

{¶ 3} A.T. testified that she and her husband, D.T., had requested a local HVAC company to send a service technician to their home to repair their broken air conditioner. There is no dispute that Zimmerer was the service technician who was dispatched to A.T. and D.T.'s home for that service call. Upon Zimmerer's arrival, A.T. showed Zimmerer where the inside air conditioner unit was located. After looking at the inside unit, Zimmerer asked A.T. if she could show him where the outside air conditioner unit was located. A.T. agreed. Once there, Zimmerer took the cover off the outside unit and discovered a dead mouse, a nest, and other debris inside. Believing this to be the problem with the air conditioner, A.T. testified that Zimmerer asked her to get a plastic bag and gloves "to remove [the mouse] so that [her] dogs couldn't get it." Although thinking that this was an odd request, A.T. nevertheless went inside and got the plastic bag and gloves as Zimmerer had asked.

{¶ 4} A.T. testified that she then came back outside and Zimmerer "actually had [her] get the mouse out" of the air conditioner and put it in the plastic bag. A.T. testified that this "felt weird," but that she "didn't question it." A.T. testified that Zimmerer then told her that he was going to clean out the rest of the unit, but asked that she "stay and hold the bag

because he didn't want [her] dogs to get the remnants of what was left from this mouse[.]" Always willing to help, A.T. testified that she agreed to hold the bag open for Zimmerer while he cleaned out the remaining debris from the unit. According to A.T., this required her to almost squat, but "not down to the ground, just a small reach-over," while Zimmerer used a brush to sweep out the debris.

{¶ 5} Explaining what happened next, A.T. testified:

> I was holding the bag, and he was using the brush with his left hand, and he was brushing it. At one point in time, he had paused to the point where I looked back at him like – to see what he was doing. At that time, it was an awkwardly long pause, and when I looked at him, he was looking behind me. So I went like this, looked over my shoulder, and when I did, I could see his phone. I could see myself in his phone.

{¶ 6} When asked specifically what she saw on Zimmerer's phone, A.T. testified:

> I could see the dress [that I was wearing] and my legs. And then, and as I moved, I could see myself, like my – not a clear vision of my face, but specifically I could see myself, see my face, and my legs, and the dress and then my face in it.

{¶ 7} Describing further what she saw on Zimmerer's phone, A.T. testified:

> It was in the camera mode because I could see myself, my legs and my dress in the camera. And then his arm was completely outreached behind my body. * * * So his phone – his arm was completely outstretched behind my body when the unit was in front of my body.

{¶ 8} A.T. also testified that she "saw the edge of [her] dress" on Zimmerer's phone, as well as "the back of [her] thigh, which would have been covered by [her] dress."

{¶ 9} After a brief struggle over Zimmerer's phone, A.T. testified that she looked up and will "never forget the look in [Zimmerer's] eyes." A.T. testified that Zimmerer then backed away from her and "started on the phone." Now scared and not sure of what Zimmerer was "capable of," A.T. testified that she yelled for her husband, D.T., and said to Zimmerer, "you're looking up my dress." To this, A.T. testified that Zimmerer "just kept

saying no, no, no. And then was on his phone." A.T. testified that she then screamed at Zimmerer that he needed to leave. A.T. testified that her husband then came out of the house and started down the stairs while Zimmerer "kept yelling, 'I'm sorry, I'm sorry * * *.'" A.T. testified that Zimmerer then put his phone away, collected his tools, and left.

{¶ 10} Similar to A.T.'s testimony, D.T. testified that Zimmerer had come to the house for a service call to repair their broken air conditioner. During this service call, D.T. testified that he came outside and saw Zimmerer "standing there next to the air conditioning unit holding his phone" just "hammering away at the screen." Not sure what he was getting himself into, D.T. testified that he approached Zimmerer as he was "repeatedly telling [A.T.], ma'am, I'm sorry, I'm sorry, I'm sorry." D.T. testified that Zimmerer was also "pressing his thumbs and he's handling the phone, the screen of the phone, saying, I'm sorry, I'm sorry."

{¶ 11} Explaining what happened next, D.T. testified:

> And he just kept saying, I'm sorry, I'm sorry, I'm sorry, ma'am, I'm sorry, just like over and over and over. And I'm like, I just thought, you know, just both him and my wife were so upset, and I thought maybe he just damaged my air conditioner or something. * * * But when I got him out of there and turned to her, she's in tears and shaking, and I knew something bad happened.

{¶ 12} D.T. testified that Zimmerer then left and A.T. told him that Zimmerer "was looking up [her] dress." D.T. testified that he then called 9-1-1.

{¶ 13} Officer Steven Seitzman, then employed with the West Chester Police Department, was dispatched to A.T. and D.T.'s house on a report of an alleged voyeurism. Upon his arrival, Officer Seitzman testified that A.T. was visibly upset. Officer Seitzman also testified that "[y]ou could tell [A.T.] had been crying; she experienced something traumatic." Officer Seitzman testified that he then spoke with A.T. and, based on their conversation, he "generated a report of voyeurism."

{¶ 14} After speaking with A.T., Officer Seitzman testified that he then met with

Zimmerer. During their conversation, Officer Seitzman testified that Zimmerer told him the following:

> He said that he takes pictures of the serial numbers on these [air conditioner] units. I asked him how he typically takes those photographs since the camera is on the back of the phone. And I asked him why the forward-facing camera was on at [A.T. and D.T.'s house], and he said it must have been an accident.

{¶ 15} Officer Seitzman testified that Zimmerer then gave him consent to search his phone. There is no dispute that Officer Seitzman did not come across any photographs or video recordings related to the incident involving A.T. during that search. Officer Seitzman, however, did discover a photograph that "appeared to be a female," later identified as T.T., "walking up the basement stairs." Further investigation revealed this photograph had been taken while Zimmer was on a service call at T.T.'s house approximately three weeks prior to the incident involving A.T.

{¶ 16} Zimmerer objected to Officer Seitzman's testimony. The trial court, however, overruled Zimmerer's objection upon finding Officer Seitzman's testimony was admissible as "other acts" evidence to show the absence of mistake or accident. As the trial court stated when overruling Zimmerer's objection:

> I think, based upon the testimony that's been offered thus far, granted it's not direct evidence for the State, but what would be his statement to the officer is that the position of the camera, the front-facing nature of it, that that was an accident. * * * So I do think the State can reasonably offer testimony that suggests the absence of mistake or accident that Zimmerer's phone was in front-facing camera mode. And, for that purpose, the Court will allow the testimony.

{¶ 17} Over Zimmerer's continuing objection, T.T. testified and confirmed Officer Seitzman's testimony that Zimmerer had come to her house for a service call approximately three weeks prior to the incident involving A.T. T.T. also confirmed that the photograph Officer Seitzman had discovered on Zimmerer's phone was in fact a photograph of her

"backside" while she was "walking up [her] basement steps." The state then rested.

{¶ 18} Zimmerer testified in his defense and acknowledged that he was the service technician who had been dispatched to A.T. and D.T.'s home to repair their broken air conditioner. Zimmerer testified that upon his arrival he went inside and "took a picture of the inside unit, of course." Zimmerer testified that he then went outside and opened the service panel on the outside air conditioner unit. Once the service panel was removed, Zimmerer testified that he discovered the air conditioner "was just completely full of a mouse and nest." Believing this to be the problem, Zimmer testified that he instructed A.T. to go inside and get a bag and gloves so that she could remove the mouse herself. This was because, according to Zimmerer, there would have been "a charge to remove the mouse."

{¶ 19} Zimmerer testified that A.T. then went inside while he stayed outside by the air conditioner "trying to get a picture" of the air conditioner's model number. Zimmerer testified that this required him to put his cellphone into the front-facing camera mode because the air conditioner was "too close to the wall, so I had to take it out and do it that way." Zimmerer testified that A.T. then came back outside with a bag and gloves to remove the mouse, "so I just went with that." After A.T. removed the mouse, Zimmerer testified that he began sweeping out the unit. During this time, Zimmerer testified that A.T. assisted him by holding the bag open. However, according to Zimmer, because the sweeping "was making a bunch of dust," he "had [his] face in [his] shirt to try to keep from breathing the debris."

{¶ 20} Explaining what happened next, Zimmerer then testified:

Q: And then, as you were doing that, [A.T.] indicated that you were attempting to photograph beneath her skirt, her legs?

A: Yes.

Q: Is that what you were trying to do?

- 6 -

A: No.

Q: What were you doing?

A: I was just trying to sweep out the mess and do my job.

{¶ 21} Continuing, Zimmerer testified:

Q: Did you ever have any intention of trying to photograph [A.T.]?

A: No.

Q: Videotape her?

A: No.

* * *

Q: Did you take any pictures of her?

A: No.

{¶ 22} Zimmerer testified that he continued to clean out the unit when A.T. looked back at him, "and [he] was like, what?" Zimmerer testified that A.T. then grabbed his phone out of his hand and accused him of "[t]rying to take pictures up her dress." To this, Zimmerer testified that he took his phone back from A.T. and tried "bring [his] photos up" so that he could show A.T. that he had not taken any pictures of her. However, according to Zimmerer, "that's when her husband came out and told me to get the 'F' out of there." Zimmerer then testified:

Q: Okay. So you attempted to tell them or show them what was going on?

A: Absolutely.

Q: And then their response was, get the "F" out?

A: Yes.

Q: And did you get the "F" out?

A: I surely did.

{¶ 23} Zimmerer also testified:

Q: When [D.T.] indicates that you were pressing on your phone when he came down, were you doing that? And if you were, what were you trying to do?

A: I was pressing my phone; I was just trying to show him that I didn't have any pictures of her.

Q: Okay.

A: I was just trying to show her that I did not do it.

Q: Were you deleting anything at that time?

A: No.

{¶ 24} Zimmerer further testified about the photograph Officer Seitzman found on his phone depicting T.T.'s backside as she walked up her basement steps. As part of this testimony, Zimmerer acknowledged that he had taken the photograph of T.T. during a service call at T.T.'s house approximately three weeks before the incident involving A.T. However, when asked why he had taken that photograph, Zimmerer testified that it was an accident, that he never intended to take the photograph of T.T., that he did not know how it happened, but "it was there." Zimmerer then rested.

**The Trial Court's Guilty Verdict and Sentencing**

{¶ 25} Following closing arguments, the trial court issued its decision finding Zimmerer guilty as charged. In so holding, the trial court initially noted that there was no actual photograph or video recording of A.T. found on Zimmerer's cellphone. However, the trial court explained this away by finding Zimmerer's "frantic pushing of the phone" was likely him "deleting" any photographs or video recordings that he had made of A.T. from his phone.

{¶ 26} The trial court then noted the other evidence that it found supported its guilt finding, "circumstantial as it may be." This includes Zimmerer's unusual behavior of asking

A.T. to "assist [him] in the repair" when that is not typically how service calls are conducted, as well as Zimmerer instructing A.T. to pull out the mouse so that he could "spend all the time brushing out the mouse nest." This was in addition to the fact that Zimmerer continued to hold his phone even though "[h]e's so concerned about breathing in the debris that he has to tuck his face into his shirt." According to the trial court, this was "proof positive" that Zimmerer had set up a "deliberate design and plan" to have his "phone out and ready" to secretly or surreptitiously photograph or video record A.T.

{¶ 27} On September 10, 2019, the trial court held a sentencing hearing and sentenced Zimmerer to 180 days in jail, with 150 of those days suspended. The trial court also placed Zimmerer on two years of reporting probation, designated Zimmerer a Tier I sex offender, and ordered Zimmerer pay a fine and court costs. The trial court further required Zimmerer to receive a mental health evaluation and to stay away from A.T. and her family. Zimmerer now appeals his conviction, raising two assignments of error for review.[1] For ease of discussion, we will address Zimmerer's two assignments of error out of order.

**Appeal**

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN ADMITTING OTHER ACTS EVIDENCE AT TRIAL.

{¶ 30} In his second assignment of error, Zimmerer argues the trial court erred by admitting "other acts" evidence at trial. Specifically, Zimmer argues that it was improper for the trial court to admit evidence that he had taken a photograph of another female customer, T.T., when she was walking up her basement stairs while he was at her house for a service

---

1. We note that the trial court stayed Zimmerer's jail sentence pending appeal.

call approximately three weeks prior to the incident in this case. We disagree.

{¶ 31} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Grimm*, 12th Dist. Clermont No. CA2018-10-071, 2019-Ohio-2961, ¶ 17, citing *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 40. To that end, pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that a person acted in conformity therewith on a particular occasion. *State v. Hart*, 12th Dist. Warren No. CA2008-06-079, 2009-Ohio-997, ¶ 11. Such evidence, however, is permitted for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident. *State v. Thomas*, 12th Dist. Butler No. CA2012-11-223, 2013-Ohio-4327, ¶ 22.

{¶ 32} Similar to Evid.R. 404(B), the General Assembly has promulgated R.C. 2945.59, which provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 33} Both the statute and the rule "codify the common law with respect to evidence of other acts of wrongdoing," and preclude admission of other acts evidence to prove a character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 16; *State v. Vore*, 12th Dist. Warren No. CA2011-

- 10 -

08-093, 2012-Ohio-2431, ¶ 39-40. Therefore, under either Evid.R. 404(B) or R.C. 2945.59, "[t]o be admissible, the other-act evidence must tend to show by substantial proof one or more of the things that the rule or statute enumerates," such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 68 (12th Dist.). "[T]he trial court is afforded broad discretion regarding the admission of other acts evidence" that will not be reversed absent an abuse of that discretion. *State v. Ward*, 12th Dist. Clermont No. CA2013-07-059, 2014-Ohio-990, ¶ 40; *Vore* at ¶ 41.

{¶ 34} There is no dispute that the trial court admitted the photograph of T.T. found on Zimmerer's phone to show an absence of mistake or accident in accordance with Evid.R. 404(B) and R.C. 2945.59. Zimmerer nevertheless argues that this exception does not apply to the incident involving A.T. since, unlike with T.T., "he did not claim that he accidentally photographed [A.T.]" However, while it may be true that no photograph of A.T. was ever found on Zimmerer's phone, and while Zimmerer never claimed to have ever photographed A.T. either intentionally or accidentally, Zimmerer did tell Officer Seitzman that it "must have been an accident" that his phone's forward-facing camera was turned on while he was at A.T. and D.T.'s residence to service their air conditioner.

{¶ 35} The trial court determined that the evidence surrounding the photograph of T.T. found on Zimmerer's phone could be admitted "for that purpose," i.e., to demonstrate the absence of mistake or accident that Zimmerer's phone was in forward-facing camera mode while at A.T. and D.T.'s residence. When considering this matter was tried to the bench, we find no error in the trial court's decision. This is because, in a bench trial, "the trial court is presumed to know the applicable law and apply it accordingly." *State v. Cornish*, 12th Dist. Butler No. CA2014-02-054, 2014-Ohio-4279, ¶ 30, citing *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383. More

- 11 -

specifically, as it relates to the facts of this case, in a bench trial "a judge is presumed to use evidence for its proper limited purposes and therefore, concern that other acts evidence will be improperly considered by the trier of fact does not exist * * *." *State v. Pettaway*, 3d Dist. Seneca No. 13-14-18, 2015-Ohio-1597, ¶ 31. Therefore, finding no error in the trial court's decision admitting this "other acts" evidence at trial, Zimmerer's second assignment of error lacks merit and is overruled.

{¶ 36} Assignment of Error No. 1:

{¶ 37} THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR VOYEURISM UNDER R.C. 2907.08(D).

{¶ 38} In his first assignment of error, Zimmerer argues his conviction for voyeurism was not supported by sufficient evidence. We disagree.

{¶ 39} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 33.

{¶ 40} As noted above, Zimmerer was convicted of voyeurism in violation of R.C. 2907.08(D). Pursuant to that statute, "[n]o person shall secretly or surreptitiously videotape,

film, photograph, or otherwise record another person under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, that other person." The term "surreptitious" is commonly defined to mean something that is "unauthorized and clandestine" that is done by "stealth and without legitimate authority." *State v. Latimore*, 12th Dist. Butler No. CA2015-09-175, 2016-Ohio-2989, ¶ 11. Therefore, by its terms, "[t]he elements of R.C. 2907.08(D) include an activity conducted 'secretly or surreptitiously' thereby implying without consent 'under or through the clothing' of another, 'for the purpose of viewing the body of, or undergarments worn by, that other person.'" *State v. Hopper*, 5th Dist. Licking Nos. 15-CA-92 thru 15-CA-96, 2016-Ohio-5760, ¶ 21.

{¶ 41} Zimmerer argues his conviction is not supported by sufficient evidence because the state failed to prove he actually took, or even attempted to take, a photograph or video recording of A.T. To support this claim, Zimmerer relies on this court's decision in *Middletown v. Reuss*, 12th Dist. Butler Nos. CA2015-06-109 and CA2015-06-122, 2016-Ohio-996. In that case, appellant, David A. Reuss, appealed his conviction in the Middletown Municipal Court for attempted voyeurism in violation of Middletown Codified Ordinance Section 666.05(d), a local ordinance that mirrors R.C. 2907.08(D). The charge arose after Reuss held his cellphone above a partition wall at a local tanning salon and pointed the phone's camera lens in the victim's direction "seemingly videotaping or photographing her" while she was "[b]are chested and clad only in panties." *Id.* at ¶ 2. Upon seeing the camera lens pointed in her direction, the victim "covered herself and yelled, banging on the partition." *Id.* at ¶ 3. The victim then confronted Reuss, who denied any wrongdoing and quickly left the tanning salon only to be arrested at work a few days later. *Id.*

{¶ 42} Reuss appealed his conviction challenging the sufficiency of the evidence

- 13 -

presented at trial. In support, Reuss raised two issues for review, only one of which is relevant here; that being whether the trial court "conflated the concepts of intent and attempt" and "improperly integrated the concepts of intent and attempt" in finding Reuss guilty of attempted voyeurism. *Id.* at ¶ 14, 16. Upon review, this court found Reuss' assertion was "supported by the trial court's remarks" at sentencing where the trial court stated, "I don't know if you took the picture or not but I think that was your intention to do it." *Id.* at ¶ 16. Therefore, "[b]y its own admission," this court determined that the trial court was "unable to discern whether Reuss actually perpetrated an attempt." *Id.*

{¶ 43} This court instead found the trial court had improperly "rested its finding of guilt upon its belief that Reuss intended to photograph [the victim]." *Id.* Accordingly, "[w]hile there may have been evidence that Reuss intended to videotape or photograph [the victim]," this court held that "this does not constitute proof sufficient to convince the average mind beyond a reasonable doubt that [Reuss] attempted to do so." *Id.* at ¶ 17. In so holding, this court stated:

> According to her testimony, [the victim] could not tell whether Reuss' phone was operating when she glanced up from her tanning booth. The phone bore no indication regarding whether it was actively photographing or recording her. Police were unable to recover any photographs or video recordings from the phone seized. Furthermore, Reuss never admitted to making a video recording or taking a photograph of [the victim]. Without more, the trial court erred in basing its finding of guilt on Reuss' intent to violate the voyeurism statute.

*Id.* at ¶ 18.

{¶ 44} Zimmerer claims that the facts in *Reuss* are identical to the facts presented here, thereby requiring his conviction be reversed. However, unlike in *Reuss* where the victim could not tell if Reuss' phone was working since the phone "bore no indication" that it was "actively photographing or recording," in this case A.T. specifically testified that she looked over her shoulder and noticed Zimmerer's arm "completely outstretched behind [her]

- 14 -

body" holding his phone, which was "in the camera mode," displaying on its screen "the edge of [her] dress," her legs, and "the back of [her] thigh, which would have been covered by [her] dress." Therefore, markedly different from the facts presented in *Reuss*, the facts presented here indicate Zimmerer was using, or had used, his phone as a camera to secretly or surreptitiously photograph and/or video record A.T. under her clothing for the purpose of viewing her body or her undergarments. This is a clear violation of the voyeurism statute at issue here, R.C. 2907.08(D).

{¶ 45} Despite Zimmerer's claims, this holds true even though no photograph or video recording of A.T. was ever discovered on Zimmerer's phone. As noted above, R.C. 2907.08(D) makes it a crime for any person to "secretly or surreptitiously videotape, film, photograph, or otherwise record another person under or through the clothing being worn by that other person for the purpose of viewing the body of, or the undergarments worn by, that other person." We must therefore agree with Zimmerer's argument "that the taking of a photograph, video, or other recording is an essential element of voyeurism under R.C. 2907.08(D)." However, simply because Zimmerer denied ever taking a photograph or video recording of A.T., coupled with the fact that no photographs or video recordings of A.T. were ever discovered on Zimmerer's phone, does not mean Zimmerer never actually secretly or surreptitiously photographed or video recorded A.T. as alleged in the complaint. That only means the state was unable to provide *direct* evidence of that element.

{¶ 46} "When offering proof, both circumstantial and direct evidence have the same probative value, and in some instances, certain facts can be established only by circumstantial evidence." *State v. Crowe*, 12th Dist. Warren No. CA2015-07-065, 2016-Ohio-1579, ¶ 19, citing *State v. Crutchfield*, 12th Dist. Warren No. CA2005-11-121, 2006-Ohio-6549, ¶ 20. When viewing the evidence in a light most favorable to the state, which we are required to do when reviewing a challenge to the sufficiency of the evidence, the

- 15 -

evidence in this case, albeit circumstantial, supports the trial court's guilt finding. This includes the trial court's decision finding Zimmerer's "frantic pushing of the phone" was likely him "deleting" any photographs or video recordings that he had made of A.T. from his phone. Circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 75. A conviction based on circumstantial evidence is no less sound than one based on direct evidence. *State v. Petit*, 12th Dist. Madison No. CA2016-01-005, 2017-Ohio-633, ¶ 18. Therefore, finding Zimmerer's conviction for voyeurism was supported by sufficient evidence, Zimmerer's first assignment of error lacks merit and is overruled.

{¶ 47} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.