[Cite as *State v. Doyle*, 2021-Ohio-4243.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-02-009 |
| | : | O P I N I O N |
| - vs - | | 12/6/2021 |
| | : | |
| CAROLYN SUE DOYLE, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2019CRB000708


David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Kim Bui, for appellant.



**HENDRICKSON, J.**

{¶1} Appellant, Carolyn Sue Doyle, appeals from her conviction in the Warren County Court for domestic violence. For the reasons set forth below, we affirm her conviction.

{¶2} On September 6, 2019, appellant was charged by complaint with domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The complaint

alleged that on or about April 23, 2019, appellant knowingly struck a household member, Thomas Doyle, in the rib cage or stomach area with the balled up fist of her right hand, thereby causing physical harm to Thomas.

{¶3} Appellant pled not guilty to the charge and a bench trial was held on January 21, 2020. The state presented testimony from Thomas and three officers employed by the Harveysburg Police Department. Appellant testified in her own defense. The testimony introduced at trial established the following facts.

{¶4} On April 23, 2019, Thomas and appellant lived together at an apartment on Brothers Street in Harveysburg, Warren County, Ohio. The couple were not legally married, as they had divorced in 2004, but continued to reside together as if husband and wife. On the date of the incident, the two got into an argument about Thomas moving out of the home. The argument escalated and appellant struck Thomas on the left cheek and in the ribs with a closed fist, thereby breaking one of his ribs. After appellant struck him, Thomas stated he threatened appellant by making a "pretend gun" with his finger and stating, "If I can't have you, nobody will." Thomas denied that he struck appellant or bumped into her during the argument. The argument concluded and the two stayed together at the apartment that evening.

{¶5} The following day, appellant drove Thomas to a hospital so that his ribs could be examined. Thomas told the hospital's intake employee that he had sustained his rib injury after falling from a chair. Thomas claimed appellant had told him to lie about how he sustained his injuries. The domestic violence incident was later reported to the Harveysburg Police Department by Thomas' son in May 2019.

{¶6} On May 15, 2019, Officer Devon Cruse and Lieutenant Donald Perkins were patrolling in Harveysburg when appellant exited her apartment and flagged them down. According to Officer Cruse, appellant was "acting very erratic and was very emotional at

the time." After identifying herself, appellant voluntarily recounted the events that occurred on April 23, 2019, stating that she had struck Thomas in the ribs. Over the course of this interaction, appellant became "very aggressive and posturing" and her demeanor changed from "happy-go-lucky to sad, tears, to very angry." Officer Cruse called for an ambulance as appellant's demeanor and behavior led him to suspect that appellant was under the influence of some substance.

{¶7} Lieutenant Perkins testified that in late September 2019 or early October 2019 appellant came to the police station to speak with the police chief. Lieutenant Perkins was present when appellant "openly admitted that she struck" Thomas during the April 23, 2019 incident. Lieutenant Perkins' testimony about appellant's admission was permitted over defense counsel's objection.

{¶8} Appellant testified that on the date of the domestic violence incident, Thomas had been directing a "cold stare" at her. She explained Thomas' eyes were "locked on [her] in a bad way" and his stare caused her "fear of [her] life." She claimed that there were past incidents where beatings and threats of taking her life had occurred after Thomas had stared at her. During direct examination, appellant claimed that she got physical with Thomas only after he got in her face, pointed his finger at her like it was a gun, and stated, "[I]f I'm going to go, you're going to go, too. If I can't have you, no one else is going to have you." After Thomas made this statement, she asked him to move and to leave the apartment, but he refused. Knowing that Thomas had loaded guns in the apartment, and fearing that he was going to kill her, appellant "raised [her] fist and [she] moved him" by striking him in his side.

{¶9} Appellant denied that she told Thomas to lie about how he obtained his injuries when she drove him to the hospital the next day. She also denied flagging down Officer Cruse and Lieutenant Perkins on May 15, 2019 to discuss the domestic violence

- 3 -

incident. She did, however, recall going to the police station, where she admitted she "could have" made an admission about hitting Thomas.

{¶10} On cross-examination, appellant claimed for the first time that in addition to verbally threatening her on April 23, 2019, Thomas physically "pushed" her. She later clarified that when Thomas was standing close to her, "his shoulder nudged mine." On re-direct, the details of the incident changed yet again, with appellant claiming that when Thomas was standing close to her and breathing on her, he also "got on top of me, his entire body." When asked to explain how this occurred, given her prior statement that she and Thomas had been standing face-to-face during their confrontation, appellant stated Thomas "[got] on top of me with his entire body and threaten[ed] me verbally."

{¶11} After hearing the foregoing testimony, the trial court found appellant guilty of domestic violence. The court sentenced appellant to 180 days in jail, three years of community control, and imposed a $75 fine and court costs.

{¶12} Appellant appeals her conviction, raising four assignments of error for review.

{¶13} Assignment of Error No. 1:

{¶14} THE TRIAL COURT ERRED IN DEPRIVING APPELLANT THE OPPORTUNITY TO PRESENT A COMPLETE DEFENSE.

{¶15} In her first assignment of error, appellant contends her due process rights were violated when the trial court refused to allow her to present evidence regarding a protection order she obtained against Thomas after the April 23, 2019 incident occurred. Appellant contends that exclusion of this evidence prevented her from presenting a "complete defense."

{¶16} On cross-examination, defense counsel asked Thomas if he was aware of a temporary protection order appellant had obtained the day after the April 23, 2019 incident, and the state objected. The following exchange then occurred:

- 4 -

[PROSECUTOR]: Whether [appellant] obtained a protection order or not is irrelevant.

[DEFENSE COUNSEL]: It goes to – it goes to what happened, the state of mind that day, that she felt threatened by him. That's what she's going to testify.

[PROSECUTOR]: She doesn't reference days in her protection order if I'm correct.

THE COURT: I don't know.

[DEFENSE COUNSEL]: She did reference a gun and the hand in the protection order.

[PROSECUTOR]: Yeah, but I'm not sure –

THE COURT: Well, first off, the evidence as it's been mentioned by this witness was that finger came after he was hit, so – so – I know what you're trying to get at, but I'm not going to allow the protection order questions. Okay?

[DEFENSE COUNSEL]: And – so as far as you're only limiting testimony to what that day was?

THE COURT: It is unless, you know, unless there's some way that the door has been opened somehow and it hasn't been.

[DEFENSE COUNSEL]: Well, he did talk about they had – they had verbal arguments beforehand –

THE COURT: Well –

[DEFENSE COUNSEL]: -- and stuff like that.

THE COURT: But he never said that that never happened during any type of direct examination of him: "I would never be violent to her, I'd never threaten her." I mean, that never came out so it would only be in a situation like that that the Court could allow previous instances to come in.

[DEFENSE COUNSEL]: So you – so you won't allow me just – we're on the record. You won't allow me to ask her about previous instances as well?

THE COURT: I'm not going to allow it.

[DEFENSE COUNSEL]: Just on that date?

THE COURT: Yeah. Now, if she wants to – if she wants to come in and say somehow he provoked her –

[DEFENSE COUNSEL]: That day?

THE COURT: -- because of a previous history –

[DEFENSE COUNSEL]: Okay.

THE COURT: -- now that's – that's –

[DEFENSE COUNSEL]: Okay.

THE COURT: -- a little bit different from the – from the victim's perspective, but I haven't heard this because he, you know, he made this motion about a finger and a gun and all of that.

[DEFENSE COUNSEL]: Uh-huh.

THE COURT: He said that happened afterwards. He didn't – he didn't say that it happened before hand.

* * *

THE COURT: So I'm going to sustain the objection.

{¶17} "[T]he Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528 (1984). However, "this constitutional right is not absolute and does not require the admission of *all* evidence favorable to the defendant." (Emphasis sic.) *State v. Swann*, 119 Ohio St.3d 552, 2008-Ohio-4837, ¶ 13. "'[T]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 46, quoting *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646 (1988).[1]

---

1. In a bench trial, "the trial court is presumed to know the applicable law and apply it accordingly." *State v. Cornish*, 12th Dist. Butler No. CA2014-02-054, 2014-Ohio-4279, ¶ 30, citing *State v. Lloyd*, 12th Dist. Warren Nos. CA2007-04-052 and CA2007-04-053, 2008-Ohio-3383. "[T]he trial court is presumed to consider only relevant, competent evidence in reaching its decision unless the appellant makes an affirmative showing to the contrary." *State v. Gearhart*, 12th Dist. Warren No. CA2017-12-168, 2018-Ohio-4180, ¶ 28.

{¶18} Furthermore, "[a] trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abused its discretion and the appellant is materially prejudiced thereby, 'an appellate court should not disturb the decision of the trial court.'" *State v. Jackson*, 12th Dist. Madison No. CA2019-03-006, 2020-Ohio-2677, ¶ 43, quoting *State v. Martin*, 12th Dist. Butler No. CA2007-01-022, 2007-Ohio-7073, ¶ 9. An abuse of discretion is more than an error of law or judgment; it suggests the trial court's decision was arbitrary, unreasonable, or unconscionable. *Id.* "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶19} Appellant contends evidence regarding the protection order she sought against Thomas should have been admitted as it helped demonstrate that she acted in self-defense when striking Thomas after he threatened to kill her and made a finger-gun gesture. She contends the protection order showed that she "was in fear for her safety given the history of abuse and violence she suffered."

{¶20} To the extent that the trial court denied appellant the ability to question Thomas about the protection order, we find that the trial court did not abuse its discretion. Whether or not Thomas knew that appellant sought a protection order after the events of April 23, 2019 occurred had no bearing on what transpired on the date of the incident. Thomas was questioned by defense-counsel about whether he struck or bumped into appellant on the night of the incident, and he denied physically touching appellant. He admitted to making a "finger-gun" gesture and threatening, "If I can't have you, no one else is going to have you," but testified that his statement and gesture occurred only after appellant struck him in the cheek and ribs. Thomas' knowledge of the protection order or the specific allegations appellant made within the protection order were not relevant to the events that occurred on April 23, 2029.

{¶21} To the extent that appellant claims evidence of the protection order should have been admitted during her direct examination to demonstrate her state of mind and that she acted in self-defense out of fear for her safety, we find that appellant did not move to introduce or admit the protection order during her testimony. Instead, in an effort to establish appellant's state of mind at the time of the incident, defense counsel questioned appellant about prior incidents where Thomas' behavior caused her to fear for her life. Appellant testified there were prior instances where Thomas' gave her a cold stare before beating her and threatening her life. She also described a prior incident where she felt threatened by Thomas as a result of his access to a loaded gun, which she claimed he had aimed at her while she was in bed. Appellant was therefore able to present evidence of how past violent incidents with Thomas impacted her state of mind on April 23, 2019 and led to her striking appellant on that day. Appellant was, therefore, not denied the opportunity to present evidence relevant to her state of mind on the date of the incident. Appellant's first assignment of error, is, therefore, overruled.

{¶22} Assignment of Error No. 2:

{¶23} THE TRIAL COURT ERRED IN DE[N]YING DEFENSE COUNSEL'S REQUEST TO BAR THE SECOND STATEMENT THAT WAS ONLY DISCLOSED TO DEFENSE THE MORNING OF TRIAL.

{¶24} In her second assignment of error, appellant contends the trial court erred in permitting Lieutenant Perkins to testify about the statement she made to him and the Harveysburg Police Chief in late September 2019 or early October 2019, wherein appellant admitted she had struck Thomas during the April 23, 2019 incident, as the state did not disclose the existence of this statement until the morning of trial. Appellant contends she did not have sufficient time to consult with counsel regarding the statement and that her due process rights were violated by the admission of the lately disclosed evidence.

{¶25} The record reveals that the state did not learn of appellant's September 2019/October 2019 statement until the morning of trial. Upon learning of the statement, the state immediately disclosed the statement to defense counsel. Defense counsel objected to the evidence being admitted at trial and the following discussion occurred:

> THE COURT: [D]efense raised to the Court this notion that the State has disclosed to the defense just this morning a second individual who happened to be on the witness list as disclosed by the State to the defense, and the second individual would have a statement against [appellant's] interest, the statement that she allegedly made, which is consistent with a previous statement that was disclosed to the defense.
>
> [Prosecutor], did I characterize that correctly?
>
> [PROSECUTOR]: Yes, Your Honor.
>
> THE COURT: All right.
>
> [PROSECUTOR]: It's a statement of the same – same nature, just a second disclosure.
>
> THE COURT: And the State represented to the Court and to counsel that you just found out about it this morning and you disclosed it to the defense as soon as you found out.
>
> [Defense Counsel], do you have anything further to make a record on?
>
> [DEFENSE COUNSEL]: I think what the Court gave as a summary is correct.
>
> Again, there is no aspersion being made toward the State, things like last-minute evidence comes in, but we are objecting to it. It is true that the statements seem to be similar to what was already disclosed.
>
> I did have an opportunity to advise my client of the first and the newly discovered statement today. She denies both.
>
> We would just ask that the Court bar the second statement being made because it is cumulative upon the first one and because maybe there would have been something we could have done about it in the meantime if we had more time to think and to consult so we ask that the second statement be barred.

THE COURT: All right. Court has considered the request by defense counsel and denies the motion to suppress that aspect of the evidence.

{¶26} Though appellant now claims her due process rights were violated by the admission of Lieutenant Perkins' testimony about her second statement, we find her argument to be without merit. As the United States Supreme Court has recognized, "[t]here is no general constitutional right to discovery in a criminal case * * *." *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837 (1977). *See also Hale*, 2008-Ohio-3426 at ¶ 120. "[A] criminal defendant has no due process right to inspect his own confession." *Id.*, citing *Leland v. Oregon*, 343 U.S. 790, 801-802, 72 S.Ct. 1002 (1952) and *Cicenia v. La Gay*, 357 U.S. 504, 510-511, 78 S.Ct. 1297 (1958), overruled in part on other grounds, *Escobedo v. Illinois*, 378 U.S. 478, 492, 84 S.Ct. 1758 (1964).

{¶27} We further find that the trial court did not abuse its discretion in admitting the evidence, as the evidence was relevant, admissible under Evid.R. 801(D)(2) as an admission by a party opponent, and there was no indication that the late disclosure was done willfully, prevented appellant from presenting a defense, or prejudiced appellant's right to a fair trial. Discovery rules are set forth in Crim.R. 16, which was implemented to "provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." Crim.R. 16(A). Once the defense files a discovery demand, "all parties have a continuing duty to supplement their disclosures." *Id.*

{¶28} When a trial court becomes aware that a party has failed to comply with a discovery rule, "the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R.

16(L)(1). The trial court is granted a "certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material. The court is not bound to exclude such material at trial although it may do so as its option." *State v. Parson*, 6 Ohio St.3d 442, 445 (1983). In evaluating the trial court's exercise of discretion as to the sanction imposed for a discovery violation committed by the state, the following factors are considered: (1) whether the failure to disclose was a willful violation of Crim.R 16, (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 35, citing *Parson* at syllabus.

{¶29} None of the three factors identified above apply in this case. Nothing in the record indicates that the state's failure to provide notice of appellant's oral statement to Lieutenant Perkins and the Harveysburg Police Chief was a *willful* discovery violation. Rather, the state indicated it had not learned of the statement until the morning of trial and, upon learning of appellant's statement, immediately disclosed the statement to defense counsel. Defense counsel recognized that the late disclosure was not willful, stating, "there is no aspersion being made toward the state, things like last-minute evidence comes in."

{¶30} There is also no evidence that foreknowledge of appellant's statement to Lieutenant Perkins and the police chief would have benefited the defense. The statement, as defense counsel noted, was "similar to what was already disclosed" and cumulative of appellant's May 15, 2019 statement to law enforcement. Additionally, to the extent possible, the state did provide defense counsel with foreknowledge of the statement as the prosecutor disclosed the statement to defense counsel as soon as she was notified of the statement before trial. *See Hale*, 2008-Ohio-3426 at ¶ 117.

{¶31} Finally, the record does not show prejudice. Defense counsel was not surprised by the statement, counsel's trial strategy did not change, and counsel did not find

it necessary to request a continuance to prepare to cross-examine Lieutenant Perkins about the second statement. Hence, "'the trial court may have properly determined that appellant was prepared to proceed despite any claim of unfair surprise.'" *Id.* at ¶ 119, quoting *State v. Bidinost*, 71 Ohio St.3d 449, 457 (1994).

{¶32} Given the record before us, we find no error in the admission of appellant's second statement to law enforcement. The trial court properly permitted Lieutenant Perkins' testimony as to this statement. Appellant's second assignment of error is, therefore, overruled.

{¶33} Assignment of Error No 3:

{¶34} THE TRIAL COURT ERRED IN ALLOWING THE STATE TO LEAD THE WITNESS INTO SAYING "SHE HIT ME."

{¶35} In her third assignment of error, appellant contends the trial court erred when it allowed the prosecutor to ask leading questions of Thomas, as doing so permitted the state to "put words in the mouth of the victim." Specifically, appellant takes issue with the following exchange between the prosecutor and Thomas, contending the prosecutor told Thomas to state that appellant hit him:

> [PROSECUTOR]: Okay. What happened next?
>
> * * *
>
> [THOMAS]: And we kept – we kept arguing about five minutes or so.
>
> [PROSECUTOR]: Okay.
>
> [THOMAS]: And then we went from the living room to the kitchen, and – (INAUDIBLE) – hit me.
>
> [PROSECUTOR]: I just want to make sure we understand. You said, "she hit you?"
>
> [THOMAS]: Yes

[DEFENSE COUNSEL]:  Objection, Your Honor.  I'm not quite sure what he said.

THE COURT:  What did you say, sir?  To answer that question, what did you say?

[THOMAS]:  She hit me.

THE COURT:  "She hit me" is what the Court understands him to say.  Go ahead.

{¶36}  "A leading question is one that suggests to the witness the answer desired by the questioner * * * or puts into the witness's mouth 'words to be echoed back.'"  *State v. Villani*, 12th Dist. Butler No. CA2018-04-080, 2019-Ohio-1831, ¶ 19, quoting *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190 (1993).  *See also State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 149.  "While Evid.R. 611(C) limits the use of leading questions during direct examination, there is no absolute prohibition to these types of questions.  It is within the discretion of the trial court to allow leading questions on direct examination, for instance, if the question is used to review previously elicited answers."  *Id.*, citing *State v. Thomas*, 12th Dist. Warren No. CA2010-10-099, 2012-Ohio-2430, ¶ 50.

{¶37}  The record demonstrates that Thomas was in the midst of describing the altercation that took place between him and appellant on April 23, 2019 when his response became somewhat inaudible.  The prosecutor sought to clarify for the record Thomas' response by repeating what she believed she heard Thomas state and asking him if that was correct:  "I just want to make sure we understand.  You said, 'she hit you?'"  Merely repeating the answer that Thomas had already given in an effort to clarify a response for the record does not amount to asking an improper leading question.  The trial court, therefore, did not err in allowing the prosecutor to ask the clarification question.  Furthermore, even if it had been a leading question, the court acted within its discretion in allowing the question.  Appellant's third assignment of error is, therefore, overruled.

{¶38}  Assignment of Error No. 4:

{¶39}  NOT ONLY WAS THE CONVICTION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, BUT THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE SUPPORTING THE ELEMENTS OF THE OFFENSE.

{¶40}  In her final assignment of error, appellant contends her domestic violence conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶41}  Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.).  When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9.  Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶42}  A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other."  *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14.  To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial

- 14 -

ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶43} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which required the state to prove that appellant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A "family or household member" includes a "spouse, a person living as a spouse, or a former spouse of the offender" who is residing or has resided with the offender. R.C. 2919.25(F)(1)(a)(i).

{¶44} In addition to the elements of domestic violence set forth above, the state also had the burden of proving beyond a reasonable doubt that the accused did not act in self-defense. *See* R.C. 2901.05(B)(1) (effective March 28, 2019). In a case involving the use of nondeadly force, an accused is justified in using force against another if (1) she was not at fault in creating the situation giving rise to the altercation and (2) she had reasonable grounds to believe and an honest belief, even though mistaken, that she was in imminent

danger of bodily harm and her only means to protect herself from the danger was by the use of force not likely to cause death or great bodily harm. *State v. Clemmons*, 12th Dist. Butler No. CA2020-01-004, 2020-Ohio-5394, ¶ 22. The state only had to "disprove one of the elements of self-defense beyond a reasonable doubt." *Id.*, citing *State v. White*, 12th Dist. Butler No. CA2019-07-118, 2020-Ohio-3313, ¶ 39.

{¶45} After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that appellant's conviction for domestic violence is supported by sufficient evidence and is not against the manifest weight of the evidence. The trial court did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of domestic violence. The state presented evidence that on April 23, 2019, appellant and Thomas still lived together as husband and wife despite being divorced in 2004, and that appellant knowingly caused physical harm to Thomas by striking him in the cheek and ribs. Contrary to appellant's assertions, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant was the initial aggressor in the physical altercation and that she did not have reasonable grounds to believe she was in imminent danger of bodily harm at the time she struck Thomas. Both appellant's and Thomas' testimony indicated that a verbal argument about Thomas moving out of the home turned physical. Thomas testified that appellant followed him from room to room in the apartment before appellant escalated the argument into a physical altercation by striking Thomas multiple times. Thomas denied that he struck, pushed, or bumped into appellant before she hit him in the face and ribs. He also denied that he verbally threatened appellant or pointed his "finger-gun" at her prior to appellant striking him. Thomas' testimony that he was struck in the ribs was corroborated by appellant's voluntary statements to Officer Cruse and Lieutenant Perkins, wherein she admitted on two separate occasions that she struck Thomas.

{¶46} Appellant claimed that she struck Thomas in order to protect herself, stating on direct examination that she acted in self-defense after Thomas gave her a cold stare, got in her face, and threatened that "[I]f I'm going to go, you're going to go, too. If I can't have you, no one else is going to have you" while making a gun with his finger. Because she believed Thomas had loaded guns in the home and feared he would take her life, appellant stated she struck Thomas in his side to get him away from her. Appellant's version of events changed on cross-examination, with appellant adding additional details – claiming for the first time that Thomas "pushed her" by nudging his shoulder into her shoulder as they stood close to one another. On redirect, appellant added even more new details, claiming for the first time that Thomas "got on top of me with his entire body" prior to her striking him.

{¶47} As the trier of fact, the trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations to judge the credibility of the witnesses and the weight to be given to the evidence. *State v. Prickett*, 12th Dist. Butler No. CA2017-01-010, 2017-Ohio-8128, ¶ 21. The trier of fact "take[s] note of any inconsistencies in the witness' testimony and resolve[s] them accordingly, believing all, part, or none of each witness's testimony." *State v. Schils*, 12th Dist. Clermont No. CA2019-08-067, 2020-Ohio-2883, ¶ 18. Here, the trial court found Thomas' testimony was credible and appellant's testimony was not. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the tier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶48} Given the evidence presented, the trial court was justified in determining that appellant had not acted in self-defense but, rather, was the initial aggressor. Additionally, appellant's actions after striking Thomas contradict her claim that she was in fear of her life.

Appellant did not call the police and report Thomas' actions. Instead, she went to bed in the same house as Thomas that night – a house that she claimed had loaded guns accessible to Thomas. Finally, the day after the incident occurred, appellant took Thomas to the hospital to get treatment for his broken rib and she instructed him to lie about the cause of his injury.

{¶49} Accordingly, for the reasons expressed above, we find that appellant's conviction for domestic violence is supported by sufficient evidence and is not against the manifest weight of the evidence. Appellant's fourth assignment of error is overruled.

{¶50} Judgment affirmed.

S. POWELL, P.J., and BYRNE, J., concur.