[Cite as *State v. Bloodworth*, 2022-Ohio-1899.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-08-073 |
| | : | O P I N I O N |
| - vs - | | 6/6/2022 |
| | : | |
| RONALD BLOODWORTH, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 20CR36990

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Kidd & Urling LLC, and Thomas W. Kidd, Jr., for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Ronald Bloodworth, appeals from his conviction and sentence in the Warren County Court of Common Pleas for felonious assault and possession of a deadly weapon while under detention. For the reasons discussed below, we affirm his conviction and sentence.

{¶ 2} On September 23, 2019, at the Lebanon Correctional Institution ("LCI") in Warren County, Ohio, inmate Michael Hammett was stabbed multiple times in the face and

head by his cellmate, Bloodworth. Bloodworth was incarcerated at LCI following his November 1998 convictions for murder, felonious assault, and having weapons while under disability.

{¶ 3} On July 13, 2020, Bloodworth was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of felonious assault by means of a deadly weapon in violation of R.C. 2903.11(A)(2), both felonies of the second degree, and one count of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), a felony of the first degree. With respect to the offense of possession of a deadly weapon while under detention, the indictment specified that the most serious offense for which Bloodworth was under detention was murder.

{¶ 4} Bloodworth pled not guilty to the charges and a two-day jury trial commenced on August 9, 2021. The state presented testimony from Hammett, Corrections Officer ("C.O.") Shay Michael, Corrections Investigator Jason Hall, and Ohio State Highway Patrol Trooper Lonnie Butler. Bloodworth testified in his own defense. The testimony at trial established the following facts.

{¶ 5} On September 23, 2019, Bloodworth and Hammett were cellmates in cell block D at LCI. The two men had met when separately housed in cell block C, became friends, and requested to "cell together" when they were moved to cell block D six months prior to the stabbing incident. Hammett, who was 63 years old and in prison following a 2015 conviction for domestic violence and felonious assault, slept on the bottom bunk in the cell. Hammett explained that he had lung disease and could not climb stairs or get into the top bunk without being winded. Hammett testified he had the energy or "gas of a baby" and had to carry an inhaler with him in case he had a breathing attack.

{¶ 6} Prior to the September 23, 2019 incident, Hammett and Bloodworth had no physical altercations with one another. The two men had prior disagreements over how

loud Bloodworth played his music, but the disagreements had never turned physical.

{¶ 7} On the day of the incident, Bloodworth and Hammett left their shared cell to grab lunch in the chow hall. Bloodworth took his meal "to go," returned to the cell, and closed the cell door, which automatically locked when closed. Hammett returned to the cell to find he had been locked out of the cell and had to wait for a corrections officer to open the door. Upon gaining entrance to the cell, Hammett told Bloodworth he could not lock him out of the cell. Bloodworth responded, "You go out, I'll lock you out again." Calling Bloodworth's bluff, Hammett walked out of the cell briefly before walking back inside. Hammett went to his side of the cell for a moment before trying to exit the cell once again. As Hammett passed by Bloodworth, Bloodworth pushed him. Bloodworth then raised his hand up towards Hammett and Hammett saw that Bloodworth was holding something, "some kind of weapon," in his hand. Though Hammett did not know what exactly Bloodworth held, he feared it would be used against him so he threw a punch towards Bloodworth. Hammett was unsure of whether his punch made contact with Bloodworth.

{¶ 8} Bloodworth stabbed Hammett in the eye with the weapon he was holding, a wooden tile holder from a Scrabble board game that he had manipulated until it had a sharp point. Hammett threw Bloodworth against the wall, but Bloodworth kept stabbing him, injuring Hammett in the hand. As Hammett struggled to leave the cell, Bloodworth jumped on his back. Bloodworth stabbed Hammett three times in the back of the head with the wooden shank before pushing Hammett out the cell door.

{¶ 9} Hurt and bleeding heavily from the injuries to his eye and head, Hammett approached C.O. Shay, who was standing near his desk. Hammett told C.O. Shay that "his cellie had [done] it." C.O. Shay called in a medical emergency and escorted Hammett to the infirmary. Another corrections officer went to Hammett's and Bloodworth's cell and placed Bloodworth in handcuffs. Bloodworth was also taken to the infirmary to be looked

at, but he had no visible injuries to his person. The blood found on Bloodworth's clothes was Hammett's blood. After a medical examination, Bloodworth was placed in isolation while officials investigated the incident.

{¶ 10} Hammett was seriously injured in the attack and had to be transported to a nearby hospital for treatment. The shank caused a "pretty deep," two-inch gap above his left eye and damaged the muscles and nerves in his eye. Although Hammett underwent surgery on his eye to repair it, he continues to have lasting vision problems as a result of the injury.

{¶ 11} Trooper Butler and Investigator Hall investigated the incident. Though there was no video footage of the actual incident, as the prison did not have a camera inside Bloodworth's and Hammett's cell, there was security footage covering the dayroom of cell block D. This footage recorded the inmates leaving and entering their respective cells. The security footage captured Hammett getting let into his cell by a corrections officer after returning from lunch, briefly stepping out of the cell before re-entering it, and then exiting the cell after being wounded.

{¶ 12} Trooper Butler and Investigator Hall interviewed Bloodworth. Bloodworth told the trooper and investigator about the shank, admitting that he had manipulated the Scrabble game piece into a weapon after finding it. Bloodworth told the trooper and investigator where he had hidden the weapon in the cell after the incident with Hammett ended. The shank was recovered in the cell on Hammett's bunk, under his pillow – exactly where Bloodworth indicated it would be found. Both Investigator Hall and Trooper Butler testified that the manipulated and sharpened shank was the type of weapon that was capable of causing another's death.

{¶ 13} Bloodworth testified that he and Hammett had been living together in cell block D for approximately six months and that he had a developed a "level of concern"

about Hammett due to Hammett's "violent tendencies." Bloodworth testified about two physical altercations that had occurred with Hammett and other inmates. He claimed that Hammett made a lot of "verbal threat[s]" against him and had "aggressive tendencies," often bumping up against Bloodworth and deliberately getting in Bloodworth's way in the cell. Bloodworth also described an incident that occurred approximately one month before the stabbing incident, wherein Hammett "flail[ed] his hands and knocked" over a fan, lamp, and other items in the cell after Bloodworth refused to turn down his music. Bloodworth stated he was "fearful of what [Hammett] might do to me" and "fearful of what he could potentially do to me eventually."

{¶ 14} Bloodworth testified that on September 23, 2019, he was eating in his cell when Hammett was let into the cell by a corrections officer. Hammett entered the cell irate, cussing at Bloodworth and calling Bloodworth names. Bloodworth made a comment about closing the door and Hammett exited the cell door and stated, "Close the door again and see what happens." Hammett then re-entered the cell, approached Bloodworth, and "started swinging on [him]." Bloodworth stated he put his hands up in self-defense, but when Hammett "kept swinging," Bloodworth started to swing back. Bloodworth claimed Hammett pulled a shank out of the waistband of his pants. Bloodworth grabbed for it and the two inmates struggled over the weapon, with Bloodworth ultimately ending up in possession of the shank. Bloodworth testified he started stabbing Hammett with the shank, stating, "I had no other choice but to do what I did, because that's what I felt would keep me from suffering great bodily harm at that time." Bloodworth claimed that he "kinda blacked out" while stabbing Hammett, admitting that he stabbed Hammett in the back of the head. However, Bloodworth claimed he "snapped back to it" and realized Hammett no longer posed a threat. At that time, Bloodworth stopped stabbing Hammett and pushed Hammett out the cell door.

{¶ 15} Bloodworth admitted that he told Trooper Butler and the prison's Rules Infraction Board that he had found the wooden game piece "days prior" to the assault and had manipulated it into a weapon by carving it down to a point. He also told the Rules Infraction Board that on September 23, 2019, he had removed the weapon from his own waistband and struck Hammett with it multiple times in the face and head. However, Bloodworth claimed he lied to Trooper Butler and the Rules Infraction Board when he told them the shank was his and that he had found it days earlier. Bloodworth stated he lied because he believed inmates involved in violent incidents at LCI were not removed from the prison, and at times, were even kept in the same cell block. Because he was concerned about the treatment he would receive from his fellow inmates if he "snitched" and disclosed that the shank belonged to Hammett, he told the Rules Infraction Board and Trooper Butler the shank was his.

{¶ 16} The jury rejected Bloodworth's claim of self-defense and found him guilty of all charged offenses. The trial court determined that the two felonious assault charges were allied offenses of similar import and the state elected to proceed with sentencing on the R.C. 2903.11(A)(1) violation. Bloodworth was sentenced to an indefinite prison term of four to six years under the Reagan Tokes Law, with the felonious assault prison term running concurrently with the sentence for possession of a deadly weapon while under detention.

{¶ 17} Bloodworth appealed his conviction and sentence, raising three assignments of error for review.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT INSTRUCTING THE JURY THAT SELF-DEFENSE APPLIES TO THE OFFENSE OF IMPROPER HANDLING A FIREARM UNDER R.C. 2923.131 [sic].

{¶ 20} Bloodworth mistakenly captioned his first assignment of error as a challenge

to the trial court's failure to provide a self-defense jury instruction for the offense of improper handling of a firearm, rather than for the offense of possession of a deadly weapon while under detention. As Bloodworth was charged with the latter offense and the argument portion of his brief contains references to the offense of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), we find it appropriate to reach the merits of his assigned error.

{¶ 21} Crim.R. 30(A) provides that a party may not assign as error the trial court's failure to give any jury instructions "unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." The failure to object to a jury instruction in accordance with Crim.R. 30(A) before the jury retires constitutes a waiver, absent plain error. *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 12.

{¶ 22} Bloodworth concedes that he did not object to the trial court's jury instructions. He further concedes that he did not file proposed jury instructions with the trial court requesting a self-defense instruction for the charge of possession of a deadly weapon while under detention. Nonetheless, he contends that we should apply an abuse-of-discretion standard of review rather than a plain-error standard of review to his assigned error as he believes the filing of his "Notice of Affirmative Defense" was sufficient to preserve the jury-instruction issue. Bloodworth filed his Notice of Affirmative Defense on August 6, 2021, three days before trial. The notice provides, "Defendant, by and through the undersigned Attorney, hereby gives notice of his intent to present the affirmative defense of self defense in the above captioned case at trial pursuant to Section 2901.05 of the Ohio Revised Code." Contrary to Bloodworth's arguments, the filing of the Notice of Affirmative Defense is not the same as filing a request for a specific jury instruction or filing an objection to the court's jury instruction. Our review, therefore, is limited to a plain-error analysis.

**{¶ 23}** Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997). Courts should notice plain error, "with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice." *Lynn* at ¶ 14.

**{¶ 24}** The self-defense statute, R.C. 2901.05(B)(1), provides in relevant part the following:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person *who is accused of an offense that involved the person's use of force against another*, there is evidence presented that tends to support that *the accused person used force in self-defense*, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the *accused person did not use the force in self-defense*, defense of another, or defense of that person's residence, as the case may be.

(Emphasis added.)

**{¶ 25}** Bloodworth was charged with possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), which provides that "[n]o person under detention at a detention facility shall possess a deadly weapon." The offense does not require or contemplate the "use of force" against another. As such, a self-defense instruction on the charge was not appropriate and the trial court did not commit any error, plain or otherwise, in not providing a self-defense jury instruction for the offense.[1]

---

1. Compare R.C. 2923.131, possession of a deadly weapon while under detention, with R.C. 2923.12, carrying concealed weapons. The latter statute expressly includes an affirmative defense to carrying a concealed weapon. Pursuant to division (D) of R.C. 2923.12,

> It is an affirmative defense to a charge under division (A)(1) of this section of

**{¶ 26}** Furthermore, even if a self-defense jury instruction was appropriate for a charge of possession of a deadly weapon while under detention, under the facts of the present case, Bloodworth cannot demonstrate that the outcome of trial would have been different if the instruction had been provided. Self-defense instructions were provided to the jury on Bloodworth's charges of felonious assault. The jury rejected Bloodworth's claim of self-defense by returning guilty verdicts on the felonious assault charges. Nothing in the record suggests the jury would not have also rejected Bloodworth's claim of self-defense on the charge of possession of a deadly weapon while under detention. The evidence presented at trial demonstrated that Bloodworth admitted to Trooper Butler and the Rules Infraction Board that he had been in possession of the shank "days prior" to the incident with Hammett, that he had manipulated the wooden Scrabble game piece into a sharp weapon, and that he had pulled the weapon from his waistband on the day of the incident before using it against Hammett. Hammett also testified that on the day of the incident, he observed the weapon in Bloodworth's hand immediately prior to Bloodworth stabbing him

---

carrying or having control of a weapon other than a handgun and other than a dangerous ordnance that the actor was not otherwise prohibited by law from having the weapon and that any of the following applies:

(1) The weapon was carried or kept ready at hand by the actor for defensive purposes while the actor was engaged in or was going to or from the actor's lawful business or occupation, which business or occupation was of a character or was necessarily carried on in a manner or at a time or place as to render the actor particularly susceptible to criminal attack, such as would justify a prudent person in going armed.

(2) The weapon was carried or kept ready at hand by the actor for defensive purposes while the actor was engaged in a lawful activity and had reasonable cause to fear a criminal attack upon the actor, a member of the actor's family, or the actor's home, such as would justify a prudent person in going armed.

(3) The weapon was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home.

The legislature did not include a similar affirmative defense to possession of a deadly weapon while under detention.

multiple times in the face and head.

{¶ 27} Accordingly, for the reasons stated above, we find that the trial court did not err in not instructing the jury on self-defense as it related to the charge of possession of a deadly weapon while under detention. Bloodworth's first assignment of error is overruled.

{¶ 28} Assignment of Error No. 2:

{¶ 29} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN MR. BLOODWORTH'S CONVICTIONS.

{¶ 30} In his second assignment of error, Bloodworth argues that his convictions for felonious assault and possession of a deadly weapon while under detention are not supported by sufficient evidence and are against the manifest weight of the evidence. Specifically, Bloodworth contends that the state "did not meet the burden of proof to show that [he] did not act in self-defense when force was used on the date in question."

{¶ 31} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side

of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). An appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

{¶ 33} Bloodworth was convicted of possession of a deadly weapon while under detention in violation of R.C. 2923.131(B), which provides that "[n]o person under detention at a detention facility shall possess a deadly weapon." If at the time of the commission of the offense, the offender was under detention for murder, the offense is a felony of the first degree. R.C. 2923.131(C)(2)(a). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶ 34} Bloodworth was also convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2). The former provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" R.C. 2903.11(A). The latter provides that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordinance." R.C. 2903.11(A)(2). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Serious physical harm includes "[a]ny physical harm that carries a substantial risk of death," "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity," "[a]ny physical harm that involves some permanent disfigurement or involves some temporary, serious disfigurement," or "[a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5)(b)-(e). "Where injuries to the victim are serious enough to cause him to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." *State v. McMurray*, 12th Dist. Preble No. CA2020-08-013, 2021-Ohio-3562, ¶ 14.

{¶ 35} In addition to the elements of felonious assault and possession of a deadly weapon while under detention, the state also had the burden of proving beyond a reasonable doubt that Bloodworth did not act in self-defense. *See* R.C. 2901.05(B)(1). The elements of self-defense in the use of deadly force are that (1) the defendant was not at fault in creating the situation giving rise to the affray, (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his one means of escape from the danger was the use of such force, and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Ray*, 12th Dist. Butler No. CA2012-10-213,

2013-Ohio-3671, ¶ 26, citing *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). However, "there is no duty to retreat before using force in self-defense in one's own home." *State v. White*, 12th Dist. Warren No. CA2018-09-107, 2019-Ohio-4312, ¶ 45, citing *State v. Thomas*, 77 Ohio S.t3d 323, 327 (1997). As the elements of self-defense are cumulative, a defendant's claim of self-defense fails if any one of the elements is disproven beyond a reasonable doubt by the state. *State v. Doyle*, 12th Dist. Warren No. CA2020-02-009, 2021-Ohio-4243, ¶ 44.

{¶ 36} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find Bloodworth's convictions for felonious assault and possession of a deadly weapon while under detention are not against the manifest weight of the evidence and are supported by sufficient evidence. The state presented testimony and evidence from which the jury could have found all the essential elements of the offenses proven beyond a reasonable doubt. Furthermore, the state presented evidence establishing beyond a reasonable doubt that Bloodworth did not act in self-defense when repeatedly stabbing Hammett in the face and back of the head with the wooden shank.

{¶ 37} With respect to the offense of possession of a deadly weapon while under detention, the state presented testimony that Bloodworth, while in prison serving a sentence for murder, possessed a wooden shank. From Trooper Butler's, Investigator Hall's, and Hammett's testimony, as well as Bloodworth's prior admissions to Trooper Butler and the prison's Rules Infraction Board, the state established that days prior to the September 23, 2019 incident, Bloodworth had found a wooden tile-holder from a Scrabble game, that he had manipulated the wooden game piece until it had a sharpened point, thereby becoming a deadly weapon, and that he possessed and used the weapon during his altercation with Hammett. As both Trooper Butler and Investigator Hall testified, the manipulated and sharpened shank was capable of inflicting death.

{¶ 38} Furthermore, with respect to the felonious assault offenses, the state presented credible evidence that Bloodworth knowingly caused serious physical harm to Hammett when he used the wooden shank to stab Hammett multiple times in the face and head. The injuries Hammett sustained in Bloodworth's attack were serious, as they required that he be transported to a nearby hospital and undergo surgery to repair the muscles and nerves in his eye. Despite the surgery, Hammett testified he continues to have lasting vision problems.

{¶ 39} Hammett testified Bloodworth was the initial aggressor as he pushed Hammett inside the cell and then pulled out the wooden shank to attack Hammett with it. Bloodworth stabbed Hammett multiple times with the shank, refusing to let Hammett leave the cell. When Hammett tried to exit the cell, Bloodworth jumped on his back and stabbed Hammett three times in the back of the head.

{¶ 40} Bloodworth disputes Hammett's version of events, claiming that it was Hammett who started the physical altercation by "swinging on [him]." He also claims that it was Hammett who originally possessed the wooden shank. Bloodworth claims he was able to take the shank from Hammett after a struggle and that he stabbed Hammett with the shank to protect himself from suffering great bodily harm.

{¶ 41} Bloodworth acknowledged his trial testimony differed significantly from the version of events that he disclosed to Trooper Butler and the prison's Rules Infraction Board. In his prior statements, Bloodworth admitted he had found the wooden game piece "days prior," he had sharpened the wood into a point, and he had pulled out the weapon during the incident with Hammett. According to Bloodworth's trial testimony, he had lied when giving statements to Trooper Butler and the Rules Infraction Board because he was concerned that he would be labeled a "snitch" and then forced to return to the same cell or cell block with inmates who would retaliate against him for snitching.

{¶ 42} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. This is because, "[a]s the trier of fact in [the] case, the jury was in the best position to judge the credibility of witnesses and the weight to be given to the evidence." *State v. Johnson*, 12th Dist. Warren Nos. CA2019-07-076 and CA2019-08-080, 2020-Ohio-3501, ¶ 24. Here, the jury was entitled to find that Bloodworth's trial testimony was not credible and reject his claim of self-defense. Bloodworth's prior statements to Trooper Butler and the prison's Rules Infraction Board were consistent with Hammett's trial testimony and the jury was entitled to rely on this evidence in finding Bloodworth was the initial aggressor and was at fault in creating the situation leading to the felonious assault.

{¶ 43} Furthermore, with respect to the component in the second element of self-defense that requires a defendant to have a "bona fide belief that the use of force was the only means of escape," this component entails only using "that force [which] is reasonably necessary to repel the attack." *Ray*, 2013-Ohio-3671 at ¶ 30. *See also State v. Williford*, 49 Ohio St.3d 247, 249 (1990). In other words, the degree of force used by the defendant in self-defense must be "warranted under the circumstances" and "proportionate to the perceived threat." *White*, 2019-Ohio-4312 at ¶ 46. Here, the state proved beyond a reasonable doubt that Bloodworth's actions were greatly disproportionate to any threat Hammett posed. Hammett was a 63-year-old man who suffered from lung disease, carried an inhaler, and could not climb stairs or get on the top bunk without being winded. By Bloodworth's own admissions, Hammett had been on the losing end of previous altercations with other inmates, having been punched in the mouth in the dayroom on one occasion and having been blindsided by an assault from another inmate in the chow hall. Even in the version of events Bloodworth testified to at trial, wherein Hammett allegedly possessed the

wooden shank first, Hammett was easily disarmed without causing any injury to Bloodworth. After taking the wooden shank, Bloodworth testified he stabbed Hammett repeatedly in the face and head. Bloodworth continued to stab Hammett as Hammett tried to get away and exit the cell, jumping on Hammett's back and stabbing Hammett in the back of the head. The jury was entitled to find that the brutality of the attack, which continued when Hammett was unarmed and was attempting to escape from Bloodworth, was not warranted or indicative of self-defense.

{¶ 44} Accordingly, for the reasons set forth above, we find that Bloodworth's convictions for felonious assault and possession of a deadly weapon while under detention are supported by sufficient evidence and are not against the manifest weight of the evidence. The jury did not lose its way and create such a manifest miscarriage of justice that Bloodworth's convictions must be reversed and a new trial ordered. Bloodworth's second assignment of error is overruled.

{¶ 45} Assignment of Error No. 3:

{¶ 46} THE INDEFINITE SENTENCING SCHEME SET FORTH IN THE REAGAN TOKES LAW AND IMPOSED BY THE TRIAL COURT IN THIS CASE VIOLATES FEDERAL AND STATE CONSTITUTIONS.

{¶ 47} Under the Reagan Tokes Law, qualifying first- and second-degree felonies committed on or after March 22, 2019, are now subject to the imposition of indefinite sentences. *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 9. The indefinite terms consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by a statutory formula set forth in R.C. 2929.144. *State v. Tutt*, 12th Dist. Preble No. CA2020-02-002, 2021-Ohio-96, ¶ 10. The maximum term equals the minimum term imposed on the offender plus 50 percent of that term. *Hodgkin* at ¶ 9.

{¶ 48} An offender sentenced under the Reagan Tokes Law has a rebuttable presumption of release at the conclusion of the offender's minimum term. R.C. 2967.271(B). "However, the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut that presumption of release if it finds, at a hearing, that any of the factors set forth in R.C. 2967.271(C)(1), (2), and (3) apply." *State v. Rogers*, 12th Dist. Butler No. CA2021-02-010, 2021-Ohio-3282, ¶ 9. If the ODRC rebuts the presumption, it may keep the offender in prison for an additional "reasonable period," but the additional time "shall not exceed the offender's maximum prison term." R.C. 2967.271(C).

{¶ 49} When the trial court imposed an indefinite sentence of four to six years on Bloodworth, defense counsel raised a general objection to the sentence on the grounds that the Reagan Tokes Law was unconstitutional. Bloodworth now argues, in his final assignment of error, that the imposition of his sentence was unconstitutional as the Reagan Tokes Law violates his right to a jury trial, his due process rights, and the separation of powers doctrine.

{¶ 50} The arguments raised by Bloodworth have been previously considered and rejected by this court. This court has already determined that R.C. 2967.271 does not run afoul of an offender's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution. *State v. Henderson*, 12th Dist. Warren No. CA2020-11-072, 2021-Ohio-3564, ¶ 13-16; *State v. Jackson*, 12th Dist. Butler No. CA2020-07-077, 2021-Ohio-778, ¶ 12-15; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 7-17. We have also determined that the Reagan Tokes Law does not violate the separation-of-powers doctrine. *State v. Suder*, 12th Dist. Clermont Nos. CA2020-06-034 and CA2020-06-035, 2021-Ohio-465, ¶ 25. Finally, we concluded that the Reagan Tokes Law does not impinge on an offender's constitutional right to a jury. *State v. Rogers*, 12th Dist. Butler No. CA2021-

02-010, 2021-Ohio-3282, ¶ 20.

{¶ 51} For the reasons previously expressed in *Henderson, Jackson*, *Guyton*, *Suder*, and *Rogers*, we find that the Reagan Tokes Law is not unconstitutional. Bloodworth's third assignment of error is overruled.

{¶ 52} Judgment affirmed.

PIPER, P.J., and BYRNE, J., concur.